1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   FRANK FALZETTA, Cal. Bar No. 125146
2  ffalzetta@smrh.com
   JENNIFER M. HOFFMAN, Cal. Bar No. 240600
3  jhoffman@smrh.com
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071-1422
   Telephone:  213.620.1780
5  Facsimile:  213.620.1398

6  Attorneys for Plaintiffs
   PEERLESS INSURANCE COMPANY
7  and AMERICAN FIRE AND
   CASUALTY COMPANY

8

9

10                UNITED STATES DISTRICT COURT

11      EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

12
   PEERLESS INSURANCE                     Case No.
13 COMPANY, a New Hampshire
   corporation, and AMERICAN FIRE
14 AND CASUALTY COMPANY, a New            **COMPLAINT FOR:**
   Hampshire corporation,
15                                        **(1)  DECLARATORY JUDGMENT;**
                Plaintiffs,
16                                        **(2)  RESTITUTION AND OTHER
        v.                                     EQUITABLE RELIEF; AND**
17
   LAGORIO BROTHERS, INC., a              **(3)  BREACH OF CONTRACT**
18 California corporation,

19                Defendant.

20

21

22         Plaintiffs Peerless Insurance Company ("Peerless") and American Fire

23 and Casualty Company ("American Fire") (American Fire and Peerless,

24 collectively, "Plaintiffs"), for claims for relief against Defendant Lagorio Brothers,

25 Inc. ("LBI"), allege as follows:

26

27

28

                                 -1-

## JURISDICTION

1.      This Court has jurisdiction over this action based upon complete diversity of citizenship under 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

2.      Plaintiff Peerless is a New Hampshire corporation, with its principal place of business in the State of Massachusetts, and at all relevant times was qualified to do business in California.

3.      Plaintiff American Fire is a New Hampshire corporation with its principal place of business in the State of Massachusetts, and at all relevant times was qualified to do business in California.

4.      Plaintiffs are informed and believe, and on that basis allege, that defendant LBI is, and at all material times was, a California corporation with its principal place of business in the Stockton, California.

## VENUE

5.      Venue is proper in this Court, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

**The Peerless Primary Policy**

6.      Peerless issued a package policy to LBI for the period May 28, 2010 to May 1, 2011, Policy No. CBP8778565 (the "Primary Policy"), which, subject to its terms and conditions, includes, among other things, Commercial General Liability ("CGL") coverage, with each occurrence limits of $1 million.

7.      The Primary Policy includes several liability coverage forms, including Form CG 00001 1001 (the "CGL Coverage Form"), which provides, in part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  …

. . .

2.    **Exclusions**

This insurance does not apply to: . . .

    j.    **Damage to Property**

        "Property damage" to:

        (1)    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

…

-3-

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

. . .

l.    **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". …

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**2.**    **Duties In The Event of Occurrence, Offense, Claim Or Suit.**

…

**c.**    You and any other involved insured must:

-4-

**(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)**    Authorize us to obtain records and other information;

**(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit; and

**(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

. . .

**SECTION V – DEFINITIONS**

…

**16.**    "Products-completed operations hazard":

**a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

…

(2)    Work that has not yet been completed or abandoned.  However, "your work" will be

-5-

deemed completed at the earliest of the following times:

    (a)     When all of the work called for in your contract has been completed.

    (b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. …

8.     The Primary Policy also includes Basic Farm Premises Liability Coverage Form  FL 04 11 01 98, which provides, in part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Subject to the provisions of this endorsement, insurance under the Commercial General Liability Coverage Form applies with respect to liability arising out of the ownership, use or maintenance of "farm premises."  The terms ownership, use or

maintenance include operations necessary of incidental to ownership, use or maintenance.

**A.    Coverage A – Bodily Injury And Property Damage Liability**

…

**3**.    Exclusion 2.l. does not apply to operations necessary or incidental to the ownership, use or maintenance of the "farm premises".

. . .

**E.    Section V – Definitions**

**1**.    The following definitions are added:

. . .

b.    "Farming" means the operation of an agricultural or aquacultural enterprise …

c.    "Farm premises" means the location identified as such in the Declarations and operated for "farming" purposes ….

9.    The Primary Policy's CGL Coverage Part Declarations include property located at 1518 N Beecher Rd, Stockton, CA 95215 (the "Beecher Orchard") as a "Premises You Own, Rent or Occupy."

**The American Fire Excess Policy**

10.    American Fire issued an excess policy to LBI for the period May 28, 2010 to May 28, 2011, Policy No. EUA 54442901 (the "Excess Policy").  The Excess Policy, subject to its terms and conditions, states per occurrence and aggregate limits of $5,000,000, which apply in excess of the underlying limits of

-7-

insurance listed in the declarations.  The Excess Policy's declarations page, form DS 70 23 01 08, includes (Item 5) Schedule of Underlying Insurance, which identifies the Primary Policy, among others.

11.    The Excess Policy includes Form CE 65 24 06 97, which provides, in part:

**I.    COVERAGE**

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** Of the Declarations, subject to **INSURING AGREEMENT** Section **II., Limits of Insurance**.  Except for the terms, conditions, definitions, and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

…

**V.    DEFINITIONS**

A.    "First underlying insurance" means the policy or policies of insurance stated as such in Item 5. Of the Declarations.

B.    "Loss" means those sums actually paid in the settlement or satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage.

…

-8-

## VI.    CONDITIONS

…

**H.    Notice of Occurrence**

       3.    You and any other involved Insured must:

           a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

           b.    authorize us to obtain records and other information;

           c.    cooperate with us in the investigation, settlement or defense of the claim or suit; and

           d.    assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of the injury or damage to which this insurance may also apply.

       4.    If the "Underlying Limits of Insurance" are exhausted solely by payment of "loss," no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**L.    When "Loss" is Payable**

Coverage under this policy will not apply unless and until the Insured or the Insured's "underlying insurance" is obligated to pay the full amount of the Underlying Limits of Insurance.

When the amount of "loss" has finally been determined, we will promptly pay on behalf of the Insured the amount of "loss" falling within the terms of this policy.

**The Lease, the Farming Agreement, and the Loss**

12.     Plaintiffs are informed and believe, and thereon allege, that brothers Brett and Steve Lagorio are the sole shareholders of LBI and another commonly-owned corporation, CARNA Farming, Inc. ("CARNA").

13.     Effective February 7, 2008, CARNA assumed an agricultural lease (the "Lease") relating to the Beecher Orchard from Lagorio Brothers, a California general partnership.[1]  Jack and Walsie Jennings (the "Jennings") own the Beecher Orchard.

14.     Simultaneously with assuming the Lease, CARNA also entered a Custom Farming Services Agreement with LBI with respect to the Beecher Orchard (the "Farming Agreement").  The Farming Agreement identifies LBI as the "Custom Farmer" and CARNA as the "Lessee."  It provides, in part:

**1.1.2**  Custom Farmer represent that it is knowledgeable and experienced in the operation and management of ranches, farms, and other agricultural production facilities and businesses.  Lessee wishes the Leased Property to be operated and maintained agricultural property, and specifically for the growing of Cherries.

---

[1]  This is not the same entity as LBI.

-10-

**1.1.3**  Lessee desires to contract with Custom Farmer for the management of the Leased Property, and Custom Farmer so contracts upon the terms and conditions and for the compensation set forth in this Agreement.

**1.1.4**  Under this Agreement, Custom Farmer, for the benefit of and at the direction of Lessee, will grow and harvest the crops of Cherries on the Leased Property during the term of this agreement (the "Crop") for Lessee and arrange for sale and delivery of the Crop. * * *

**3.2**    Services.  Subject to the reasonable direction of Lessee, Custom Farmer shall provide, and otherwise arrange for, all farming services reasonably necessary and prudent to properly care for and manage the Leased Property, to grow the Crops to maturity in a condition ready for harvest, to harvest the mature crops, and to market and arrange for processing, packing, and sale of the Crops, all under the terms and conditions of this agreement.  These services shall include, without limitation, all necessary and appropriate planting, cultivation, farm chemical applications, irrigation, fertilization, care and cultivation of the Crops, harvesting, and sale and delivery to a packing facility and marketer.  Custom Farmer shall provide all items of equipment, labor, and materials necessary to perform the services. * * *

**3.8**    Sale and Processing of Crop.  Custom Farmer shall arrange for sale of the Crop by Lessee at the market price at the time of the sale.  Custom Farmer may sell the Crop through pooling arrangements reasonably approved by Custom Farmer.

-11-

15.    In July 2010, Brett Lagorio reported a loss involving Beecher Orchard to Peerless.  According to Mr. Lagorio, in June of 2010, an LBI employee inadvertently sprayed approximately 4,000 of the cherry trees on the Beecher Orchard with a pesticide, which damaged and ultimately destroyed the trees (the "Loss").

16.    On August 23, 2010, LBI provided a damage estimate for the Loss that included the cost to replace the trees, train replacement trees for 4 years, and loss of production for 4-5 years, totaling $385,000.

17.    Peerless' initial investigation supported that coverage did not exist for the Loss under the liability or property portions of the Primary Policy.  It advised LBI of its coverage position in August 2010.

18.    LBI disputed Peerless' coverage position and retained attorney Darin Judd to contest it.  Mr. Judd provided Peerless with additional information and asked Peerless to reconsider its position.

19.    Peerless reconsidered its coverage position and, by letter dated May 22, 2012, accepted LBI's tender of the liability claim under the Primary Policy subject to a reservation of rights, including the right to deny coverage based on the Exclusion (j) in the CGL Coverage Form.

**The Underlying Lawsuit and Peerless' Acceptance of LBI's Defense**

20.    On October 10, 2014, CARNA and the Jennings (the "CARNA Plaintiffs") filed a Complaint against LBI in San Joaquin Superior Court, Case No. CV-2014-0010285 (the " Underlying Lawsuit").  The CARNA Plaintiffs were represented in the Underlying Lawsuit by Mr. Judd, LBI's former counsel.

21.    In their Complaint, the CARNA Plaintiffs alleged that LBI "negligently applied chemicals" to cherry trees in the Beecher Orchard and, "[a]s a direct and legal result of the negligence of LBI, PLAINTIFFS' 21.45 acres of cherries in the orchard were destroyed, requiring the removal of the cherry trees, and replacement

1  of the cherries [sic] trees." The CARNA Plaintiffs further alleged that their

2  damages expert, Dr. Dale Rush, "estimated the damages in September of 2012 to be

3  at least $703,727.60."

4       22.    Peerless accepted LBI's tender of defense of the Underlying Lawsuit

5  under the Primary Policy, subject to a reservation of rights, and retained Renee

6  Livingston, Esq. of the Livingston Law Firm as tripartite defense counsel for LBI

7  ("Livingston").

8       23.    Livingston saw the potential for a conflict of interest given her ethical

9  obligations to LBI and Peerless as joint clients, and Brett and Steve Lagorios'

10  mutual ownership of LBI and CARNA. In March 2015, Livingston sent Peerless

11  and LBI a letter disclosing the potential for a conflict in that the Lagorios "could use

12  information obtained from [Livingston] pertinent to LBI's defense to the advantage

13  of CARNA, or instruct [Livingston] to take action on LBI's behalf that is contrary to

14  LBI's defense, in favor of CARNA's interests." Livingston emphasized that the

15  conflict was only a *potential* one at that time, and assured Peerless that the Lagorios

16  had thus far been "completely scrupulous in their dealings with all counsel." She

17  continued:

18         If either party does not consent, or later withdraws consent, or if after

19         having received consent, [Livingston] learns that Steve Lagorio or

20         Brett Lagorio has taken some action that is contrary to their duties to

21         LBI or to Peerless pertinent to the Jennings Lawsuit, then [Livingston]

22         will be required to withdraw from representing both LBI and Peerless

23         in this case.

24  Peerless and LBI consented to these terms, and Ms. Livingston proceeded to defend

25  LBI in the Underlying Lawsuit.

26       24.    On October 26, 2015, LBI's coverage counsel, Gretchen Hoff Varner

27  of Covington & Burling LLP ("Covington"), sent Peerless a letter contesting

28  Peerless' reservation of rights and asserting that it created a conflict of interest

                                   

requiring Peerless to provide LBI with independent defense counsel under California Civil Code section 2860.

25.    Peerless disagreed with LBI's position.  However, in order to retain control of the defense of the Underlying Lawsuit and avoid a further coverage dispute, and having been assured that no actual conflict of interest existed as between Peerless, LBI, and Livingston, Peerless withdrew its initial reservation of rights on October 30, 2015.

**LBI Abandons its Common Interest with Peerless in Defending Against the CARNA Plaintiffs' Damages Claims**

26.    On January 7, 2016, LBI informed Livingston that it "has worked with an expert, Dr. Rush, to analyze the total loss" and "is confident that Dr. Rush's analysis is based on actual facts, and is accurate."  Dr. Rush was the CARNA Plaintiffs' damages expert, *not* LBI's.

27.    In February 2016, the CARNA Plaintiffs propounded written discovery to LBI, including Requests for Admission, Form Interrogatories, Special Interrogatories and Requests for Production.  The Requests for Admission (the "Requests") asked LBI to admit, among other things, that:

"YOU owe JENNINGS and CARNA damages of at least $703,727.60, as prayed for in the COMPLAINT";

"YOU have received subsequent documentation and information confirming damages sustained due to the negligent act of your employee, and alleged in the COMPLAINT, in the amount of a loss of production from 2011 through 2014 of $1,664,866.19, and a cost to replant of $196,218.34, for a total loss of $1,861,084.53;" and

> "YOU have no facts to support the affirmative defenses that YOU alleged in YOUR ANSWER ...."

28.    The damages figures in the Requests far exceeded prior damages estimates by LBI *and* estimates by the CARNA Plaintiffs' expert Dr. Rush.

29.    Livingston did not believe the facts supported admitting the Requests. Moreover, damages in the Underlying Lawsuit would be the subject of expert testimony and expert discovery was ongoing.

30.    Livingston recommended that LBI respond to the Requests by objecting that expert discovery was ongoing and, on that basis, LBI could not admit or deny the Requests at that time.

31.    LBI refused Livingston's recommendation and demanded that she serve verified responses raising no objections and admitting the Requests without qualification.  LBI also asserted that, in its view, liability and damages in the Underlying Lawsuit were uncontested.

32.    This assertion ran directly contrary to LBI's and Peerless' common interest in defending the damages claims asserted against LBI in the Underlying Lawsuit.  It also created an actual and irreconcilable conflict of interest for Livingston.

33.    In July 2016, Livingston wrote to LBI and Peerless:

> "It is now apparent that Livingston Law Firm has developed significant and irreconcilable conflicts with LBI in regard to the defense and further handling of this matter, and for that reason must withdraw from legal representation of LBI."

34.    LBI's conduct against its and Peerless' common interest in defending the damages claims alleged in the Underlying Lawsuit not only required Livingston to withdraw, but also prevented Peerless from retaining other defense counsel to represent LBI or otherwise maintaining control of the defense.

-15-

35.     Under California law, Peerless had the exclusive right to control LBI's defense either immediately upon its acceptance of the defense under a reservation of rights, which did not create a disqualifying conflict of interest for insurer-selected defense counsel, or, no later than October 30, 2015, when Peerless withdrew its initial reservation of rights.  As of July 2016, LBI's conduct had irreparably frustrated and deprived Peerless of that exclusive right to control the defense.

**Peerless Reserves the Right to Deny Coverage Based on LBI's Conduct, Provides LBI with Independent Counsel, and Intervenes in the Underlying Lawsuit**

36.     On August 17, 2016, Peerless sent a new reservation of rights letter to LBI outlining the conduct above and reserving the rights to deny coverage to LBI based on LBI's abandonment of its interest in defending the damages claims asserted against it in the Underlying Lawsuit and collusive conduct with the CARNA Plaintiffs.  Peerless wrote that LBI's conduct violated the Primary Policy's cooperation provision, no voluntary payments provision, and implied covenant of good faith and fair dealing.  American Fire also joined in the reservation of rights under the Excess Policy.

37.     In its August 17, 2016 letter, Peerless also offered to provide LBI with independent counsel, pursuant to Civil Code section 2860, subject to its new reservation of rights.

38.     LBI ultimately accepted Peerless' independent counsel offer.  LBI selected its coverage counsel, Covington, as its defense counsel under Section 2860. LBI also agreed to accept the following rates from Peerless as payment in full for Covington' defense fees: $225 an hour for partners, $200 an hour for associates, and $100 an hour for paralegals.

39.      Because LBI had abandoned its and Peerless' common interest in defending against the damages claims alleged in the Underlying Lawsuit, Peerless also moved to intervene in the Underlying Lawsuit in an attempt to protect its

remaining interest.  In September 2016, the trial court entered an order allowing Peerless' intervention.  In so ruling, the trial court rejected LBI's objections that (1) Peerless' defense would prejudice LBI, and (2) Peerless' interests in the Underlying Lawsuit were adequately represented by LBI.

**LBI's Conduct Contrary to Its and Peerless' Common Interest in Defending Against the CARNA Plaintiffs' Claims Continues**

40.    Even after accepting Peerless' offer of independent counsel and representing that Covington would actually defend LBI in the Underlying Lawsuit, LBI failed to defend against the CARNA Plaintiffs' damages claims.  Instead, LBI continued acting contrary to its interest in defending against the CARNA Plaintiffs' damages claims and colluding with the CARNA Plaintiffs.

41.    Peerless is informed and believes, and thereon alleges, that evidence of LBI's collusion and conduct prejudicial to its and Peerless' common interest in defending against the CARNA Plaintiffs' damages claims includes, but is not limited to:

　　　　a.    Mr. Judd initially representing LBI in connection with its claim of coverage for the loss, and later representing the CARNA Plaintiffs in the Underlying Lawsuit against LBI;

　　　　b.    LBI's August 23, 2010 damages estimate, including the cost to replace the trees, train replacement trees for 4 years, and loss of production for 4-5 years, totaling $385,000.

　　　　c.    Covington's January 7, 2016 letter to Livingston, admitting that LBI "has worked with" Plaintiff's damages expert, Dr. Dale Rush, and "is confident that Dr. Rush's analysis," estimating damages at approximately $700,000, "is based on actual facts, and is accurate";

　　　　d.    LBI's demands that Peerless accept the CARNA Plaintiffs' March 2016 statutory offers to compromise, totaling $999,501.69, when that

-17-

amount far exceeded both Dr. Rush's and the defense expert consultant's damages estimates;

e.     Covington's June 29, 2016 letter, stating that liability and damages were uncontested and that, if tripartite counsel did not concede those issues, LBI would "continue to provide accurate and truthful responses directly to plaintiffs;"

f.     LBI's refusal to follow Livingston's recommendation to deny the Requests, asking LBI to admit that LBI had no defenses in the Lawsuit and admit Plaintiffs' damages claims of approximately $1.8 million, when such claims were the subject of expert testimony and that figure far exceeded any expert opinion to date;

g.     LBI's insistence that Livingston serve verified responses, admitting the Requests without qualification, which would not only remove all defenses to the CARNA Plaintiffs' damages claims, but affirmatively admit them;

h.     Mr. Judd's July 18, 2016 disclosure that he knew of LBI and Peerless' conflict waiver with Livingston, a communication protected by the attorney-client privilege as between LBI, Peerless, and Livingston;

i.     Mr. Judd and LBI representatives attending the July 20, 2016 deposition of LBI after Livingston advised the depositions could not proceed based on the irreconcilable conflict of interest LBI had created;

j.     Covington's July 29, 2016 disclosure that, after Livingston had declined to serve responses to the Requests admitting liability and damages to the CARNA Plaintiffs of more than $1.8 million, LBI "serve[d] those responses itself;"

k.     LBI's active opposition of Peerless' efforts to intervene in the Underlying Lawsuit to protect against a default and defend against the CARNA Plaintiffs' damages claims;

l.    LBI accepting Peerless' offer to provide independent defense counsel when LBI had no intent of defending against the CARNA Plaintiffs' damages claims;

m.    LBI's repeated failure to comply with Peerless' written requests for cooperation in defense of the claims alleged against LBI in the Underlying Lawsuit;

n.    LBI's failure to oppose the CARNA Plaintiff's Motion to Compel, seeking an order deeming the Requests admitted and an order compelling LBI to appear for deposition;

o.    LBI's later admission of Plaintiff's Requests over Peerless' objection;

p.    The CARNA Plaintiffs moving for, and obtaining, a court order compelling LBI to appear for deposition, but never completing the deposition;

q.    LBI's production of an expert witness, Dr. David Sunding, who opined that damages were *more* than Plaintiffs claimed;

r.    LBI's and Plaintiffs' joint settlement demand at the Mandatory Settlement Conference, which reflected $1.8 million in damages to the CARNA Plaintiffs and $500,000 in damages for LBI based on Peerless' purported bad faith conduct;

s.    LBI opposing Peerless' Motions *in Limine,* seeking to exclude evidence of certain damages at trial;

t.    LBI's failure to oppose the CARNA Plaintiffs' Motions *in Limine*;

u.    LBI and the CARNA Plaintiffs filing Opposition Briefs to Peerless' Motions *in Limine* which mirrored each other;

v.    LBI joining with the CARNA Plaintiffs in opposing Peerless' Motion to Quash Plaintiffs' Notice to Appear at trial directed to Peerless and seeking testimony regarding Peerless' handling of LBI's claim for coverage;

-19-

1       w.    LBI including its insurance broker as a witness on its trial

2   witness list, who could only attest to facts as between LBI and Peerless,

3   which had nothing to do with the CARNA Plaintiffs' damages claims;

4       x.    LBI's objection to Peerless' request that it be named as an

5   unnamed intervenor at trial, so as to avoid any mention of insurance at trial

6   and ensure any judgment be based on evidence and not passion or prejudice

7   against insurers;

8       y.    That, after filing the Underlying Lawsuit, the CARNA Plaintiffs

9   paid LBI costs LBI incurred in replanting the damaged cherry trees (the

10   "Replant Costs"), and then claimed those damages against LBI against trial;

11       z.    LBI's failure to timely provide Peerless and Livingston

12   documentation of the CARNA Plaintiffs' payment of the Replant Costs;

13       aa.    LBI's failure to assert affirmative defenses, including that

14   Plaintiffs could not recoup their Replant Costs payment on the ground that

15   such payment was voluntary and, therefore, unrecoverable under California

16   law;

17       bb.    LBI successfully arguing to the trial court that the voluntary

18   payment defense had been waived based on LBI's failure to assert it in its

19   Answer;

20       cc.    LBI and the CARNA Plaintiffs aligning themselves against

21   Peerless at the trial of the Underlying Action, so that the trial was essentially

22   one between LBI and the CARNA Plaintiffs on the one hand and Peerless on

23   the other;

24       dd.    LBI and the CARNA Plaintiffs' unified trial theme of vilifying

25   Peerless in an effort to inflate a damages award based on Peerless' status as

26   an insurer;

27       ee.    The CARNA Plaintiffs' central reliance on the testimony of Lora

28   Lagorio to support their damages claims, when Ms. Lagorio had verified

-20-

LBI's discovery responses and appeared as a representative of LBI in the Underlying Lawsuit;

ff.    LBI's presentation of evidence at trial that admittedly exceeded the damages claimed by Plaintiffs, which the jury ultimately accepted in entering its verdict against LBI.

42.    On February 24, 2017, the trial court entered judgment against LBI in the Underlying Action in the amount of $2,284,583.14 (the "Judgment"), which Peerless is informed and believes followed *LBI's* collusive damages evidence at trial – which exceeded even Plaintiffs' damages evidence.  That figure is approximately $2 million more than LBI's initial damages estimate, $1.8 million more than Peerless' expert's damages estimate, $1.5 million more than Dr. Rush's estimate when the CARNA Plaintiffs' filed the Underlying Action, and $400,000 more than the CARNA Plaintiffs' damages estimate at trial.  The Judgment also included an award for the Replant Costs in the amount of $169,998.34 – an item of damage that LBI could have, but failed to, defend against and frustrated Peerless' ability to defend against.

43.    On March 28, 2017, LBI sent Peerless a letter demanding payment of (1) $2,302,713.65, which LBI contends reflects the Judgment plus interest and (2) $542,072.77, which LBI contends reflect Covington's  "defense fees and costs" for the Underlying Lawsuit (the "Covington Fees").  The Covington Fees reflect services provided to LBI at billed rates far higher than the rates LBI agreed to accept from Peerless.  For example, partner services were billed at up to $960 an hour.  Associate services were billed at up to $660 an hour.  The Covington Fees also include an invoice from Dr. Sunding, totaling $18,000.

44.    Peerless and American Fire contend that they have no obligation to pay or indemnify LBI for the Judgment, because, among other things, LBI (1) colluded with the CARNA Plaintiffs to obtain it, (2) frustrated Peerless' right to control the defense, (3) prejudiced Peerless' ability to defend, even after Peerless intervened in

the Underlying Lawsuit, and (4) violated the Policies' cooperation and no voluntary payments provisions and the implied covenant of good faith and fair dealing.

45.   Peerless contends that it has no obligation to defend LBI or pay the Covington Fees, because any obligation Peerless may have had to defend LBI under the Primary Policy was excused by LBI's collusive and prejudicial conduct, which violated the cooperation and no voluntary payments provisions and constituted a material contractual breach of the implied covenant of good faith and fair dealing. To the extent any duty existed, despite such conduct, Peerless contends that it has no duty to pay some or all of the Covington Fees because:  (1) the Covington Fees do not reflect fees and costs reasonable and necessary to the defense of LBI; (2) the Covington Fees reflect charges at higher rates than LBI agreed to accept from Peerless; and (3) to the extent LBI disclaims that agreement, Peerless' obligation to pay defense fees and costs is limited by Section 2860 and subject to mandatory arbitration.

## **FIRST CLAIM FOR RELIEF**

(For Declaratory Judgment: No Duty to Indemnify/Pay the Judgment)

46.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this Complaint as though fully set forth here.

47.   An actual controversy exists between Plaintiffs and LBI regarding Plaintiffs' obligations, if any, to indemnify LBI and pay the Judgment in the Underlying Lawsuit.

48.   Plaintiffs are informed and believe, and on that basis allege, that LBI contends that one or more of the Policies obligate(s) Plaintiffs to indemnify LBI and pay the Judgment.  Plaintiffs dispute this, and contend, among other things, that:

a.   Peerless had the right, under the Primary Policy, to control the defense of the Underlying Lawsuit.

b.      LBI interfered with and deprived Peerless of its right to control the defense, which constitutes a material failure to cooperate or other breach under the express terms of the Policies or the implied covenant of good faith and fair dealing;

c.      LBI interfered with and frustrated Peerless' defense of the claims alleged against LBI in the Underlying Lawsuit even after Peerless intervened, which constitutes a material failure to cooperate or other breach under the express terms of the Policies or the implied covenant of good faith and fair dealing;

d.      Plaintiffs had the right to control settlement of the Underlying Lawsuit, and the right to a trial on the CARNA Plaintiffs' damages claims, which fell well within the combined $6 million liability limits of the Policies;

e.      LBI not only admitted the CARNA Plaintiffs' damages claims, but successfully argued to the jury that the CARNA Plaintiffs' damages were even more than they had claimed, which constitutes a material failure to cooperate, voluntary assumption of liability, or other breach under the express terms of the Policies or a breach of the implied covenant of good faith and fair dealing;

f.      LBI colluded with the CARNA Plaintiffs in obtaining the Judgment, which constitutes a material failure to cooperate, voluntary assumption of liability over Plaintiffs' objection, or other breach under the express terms of the Policies or a breach of the implied covenant of good faith and fair dealing; and

g.      LBI's conduct excused any duty Plaintiffs may have had to indemnify LBI for the Judgment under the Policies.

49.     Plaintiffs are entitled to a judicial determination of their rights and duties under the Policies, pursuant to 28 U.S.C. § 2201, which provides:

> In a case of actual controversy within its jurisdiction . . .
> any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such

-23-

1  declaration, whether or not further relief is or could be

2  sought.  Any such declaration shall have the force and

3  effect of a final judgment or decree and shall be

4  reviewable as such.

5  50.  Plaintiffs have no plain, speedy or adequate remedy at law to resolve

6  the controversy between it and LBI.

7  51.  The Plaintiffs seek a judicial determination and declaration by this

8  Court, under 28 U.S.C. § 2201, as follows:

9  a.  Peerless had the right, under the Primary Policy, to control the

10  defense of the Underlying Lawsuit.

11  b.  LBI interfered with Peerless' right, and deprived it of its right, to

12  control the defense, which constitutes a material failure to cooperate or other breach

13  under the express terms of the Policies or the implied covenant of good faith and fair

14  dealing;

15  c.  LBI interfered with, and frustrated, Peerless' defense of the

16  claims alleged against LBI in the Underlying Lawsuit, even after Peerless

17  intervened, which constitutes a material failure to cooperate or other breach under

18  the express terms of the Policies or the implied covenant of good faith and fair

19  dealing;

20  d.  Plaintiffs had the right to control settlement of the Underlying

21  Lawsuit, and the right to a trial on the CARNA Plaintiffs' damages claims, which

22  fell well within the combined $6 million liability limits of the Policies;

23  e.  LBI not only admitted the CARNA Plaintiffs' damages claims,

24  but successfully argued to the jury that the CARNA Plaintiffs' damages were even

25  more than they had claimed, which constitutes a material failure to cooperate,

26  voluntary assumption of liability, or other breach under the express terms of the

27  Policies or the implied covenant of good faith and fair dealing;

28

f.      LBI colluded with the CARNA Plaintiffs in obtaining the Judgment, which constitutes a material failure to cooperate, voluntary assumption of liability over Plaintiffs' objection, or other breach under the express terms of the Policies or the implied covenant of good faith and fair dealing; and

g.      LBI's conduct excused any duty Plaintiffs may have had, under the Policies, to indemnify LBI for the Judgment.

## SECOND CLAIM FOR RELIEF

(For Declaratory Judgment: No Duty to Defend/Pay the Covington Fees)

52.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 of this Complaint as though fully set forth here.

53.     An actual controversy exists between Peerless and LBI regarding Peerless' obligation to defend LBI in the Underlying Lawsuit under the Primary Policy and/or pay the Covington Fees.

54.      Plaintiffs are informed and believe, and on that basis allege, that LBI contends that Peerless was, and is, obligated to provide LBI with independent defense counsel in the Underlying Lawsuit and pay the Covington Fees at their as-billed rates.  Peerless disputes this and contends that it has, and had, no duty to provide LBI with independent counsel or pay the Covington Fees under the Primary Policy.  American Fire also contends that it has, and had, no duty to defend LBI under the Excess Policy.  Plaintiffs contend:

a.      LBI's conduct excused any obligation of Peerless to defend LBI in the Underlying Lawsuit;

b.      Peerless had no obligation to provide LBI independent defense counsel in the Underlying Lawsuit;

c.      Peerless had no obligation to pay independent defense counsel (a) more than the rates required under Civil Code section 2860 and agreed to by

-25-

1   LBI, or (b) for services that did not serve to actually defend LBI against the claims

2   asserted in the Underlying Lawsuit;

3           d.    All or some of the Covington Fees do not reflect fees and costs

4   incurred to defend LBI against the claims asserted in the Underlying Lawsuit;

5           e.    American Fire had no duty to defend LBI in the Underlying

6   Lawsuit under the Excess Policy; and

7           f.    Plaintiffs have, and had, no obligation to pay any portion of the

8   Covington Fees.

9       55.    Plaintiffs are entitled to a judicial determination of their rights and

10  duties under the Policies, pursuant to 28 U.S.C. § 2201, which provides:

11          In a case of actual controversy within its jurisdiction . . .

12          any court of the United States, upon the filing of an

13          appropriate pleading, may declare the rights and other

14          legal relations of any interested party seeking such

15          declaration, whether or not further relief is or could be

16          sought.  Any such declaration shall have the force and

17          effect of a final judgment or decree and shall be

18          reviewable as such.

19      56.    Plaintiffs have no plain, speedy, or adequate remedy at law to resolve

20  the controversy between them and LBI.

21      57.    Plaintiffs seek a judicial determination and declaration by this Court,

22  under 28 U.S.C. § 2201, as follows:

23          a.    American Fire had no duty to defend LBI in the Underlying

24  Lawsuit under the Excess Policy;

25          b.    LBI's conduct excused any obligation of Peerless to defend LBI

26  in the Underlying Lawsuit under the Primary Policy;

27          c.    Peerless had no obligation to provide LBI independent defense

28  counsel in the Underlying Lawsuit;

                                                   

        d.      To the extent Peerless had a duty to provide LBI independent counsel, Peerless had no obligation to pay independent defense counsel more than the rates agreed to by LBI;

        e.      To the extent Peerless had a duty to provide independent counsel and LBI disputes its rate agreement, the parties must resolve the rate dispute through mandatory arbitration pursuant to Section 2860; and

        f.      To the extent Peerless had a duty to provide LBI independent counsel, Peerless had, and has, no duty to pay some or all of the Covington Fees, because they do not reflect fees and costs reasonable and necessary to the defense of the claims alleged against LBI in the Underlying Lawsuit.

## THIRD CLAIM FOR RELIEF

(For Restitution, Recoupment, Unjust Enrichment and/or other Equitable Relief for Reimbursement of Payments Made Towards the Judgment and Covington Fees)

58.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.     If this Court rules that Plaintiffs had no duty to indemnify LBI in the Underlying Lawsuit and/or that any duty to indemnify was excused, then Plaintiffs are entitled to restitution or reimbursement from LBI for all payments made towards the Judgment, plus prejudgment interest.

60.     If this Court rules that Peerless had no duty to provide LBI with independent defense counsel in the Underlying Lawsuit, then Peerless is entitled to restitution or reimbursement from LBI for all payments made towards the Covington Fees, plus prejudgment interest.

61.     If this Court rules that Peerless had a duty to provide LBI with independent defense counsel in the Underlying Lawsuit, any such duty was limited to the rates required under Section 2860 for fees and costs reasonable and necessary to the defense of LBI, then Peerless is entitled to reimbursement or restitution from

-27-

LBI for all payments made towards the Covington Fees in excess of any fees and/or costs paid (a) at rates higher than required under Section 2860 as determined by mandatory arbitration, and (b) which do not reflect fees and costs reasonable and necessary to the defense of the claims alleged against LBI in the Underlying Lawsuit, plus prejudgment interest.

## FOURTH CLAIM FOR RELIEF

### (For Breach of Contract)

62.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 61 of this Complaint as though fully set forth here.

63.    Under the Primary Policy, Peerless has the right to control LBI's defense in the Underlying Lawsuit, absent a conflict of interest for defense counsel appointed by Peerless.

64.    Peerless timely accepted LBI's defense in the Underlying Lawsuit subject to a reservation of rights that did not create a conflict of interest for appointed defense counsel, Livingston.

65.    Peerless later withdrew its initial reservation of rights, so as to avoid any dispute regarding its right to control the defense in the Underlying Action.

66.    LBI materially frustrated and deprived Peerless of its right to control the defense of the Underlying Action through conduct contrary to LBI's and Peerless' common interest of defending against the CARNA Plaintiffs' damages claims.  LBI's conduct created an irreconcilable conflict of interest for Livingston, which required her withdrawal and prevented Peerless from retaining new tripartite counsel.

67.    After depriving Peerless of its right to select counsel and control the defense, LBI selected independent counsel that did not cooperate with Peerless or defend LBI against the CARNA Plaintiffs' damages claims.  Instead, LBI colluded

SMRH:482367719.1                                                      COMPLAINT

with the CARNA Plaintiffs to increase the amount of damages for which LBI was found liable at trial.

68. LBI's conduct breached the Primary Policy's cooperation clause, no voluntary payment clause, and the implied covenant of good faith and fair dealing, and resulted in a Judgment that was the product of collusion.

69. As a result of LBI's breach of its obligations under the Primary Policy and/or the law, Peerless been damaged in an amount to be determined at trial or by motion.

## **PRAYER FOR RELIEF**

Plaintiffs request the following relief:

1. For declarations that:

   a. Peerless had the exclusive right to control LBI's defense in the Underlying Lawsuit either immediately upon its acceptance of the defense under a reservation of rights, which did not create a disqualifying conflict of interest for insurer-selected defense counsel, or, no later than October 29, 2015, when Peerless withdrew its initial reservation of rights;

   b. LBI interfered with Peerless' right, and deprived it of its right, to control the defense, which constitutes a material failure to cooperate or other breach under the express terms of the Policies or the implied covenant of good faith and fair dealing;

   c. LBI interfered with, and frustrated, Peerless' defense of the claims alleged against LBI in the Underlying Lawsuit, even after Peerless intervened, which constitutes a material failure to cooperate or other breach under the express terms of the Policies or the implied covenant of good faith and fair dealing;

d.    Plaintiffs had the right to control settlement of the Underlying Lawsuit, and the right to a trial on the CARNA Plaintiffs' damages claims, which fell well within the combined $6 million liability limits of the Policies;

e.    LBI not only admitted the CARNA Plaintiffs' damages claims, but successfully argued to the jury that the CARNA Plaintiffs' damages were even more than they had claimed, which constitutes a material failure to cooperate, voluntary assumption of liability, or other breach under the express terms of the Policies or the implied covenant of good faith and fair dealing;

f.    LBI colluded with the CARNA Plaintiffs in obtaining the Judgment, which constitutes a material failure to cooperate, voluntary assumption of liability over Plaintiffs' objection, or other breach under the express terms of the Policies or the implied covenant of good faith and fair dealing;

g.    LBI's conduct excused any duty Plaintiffs may have had to indemnify LBI for the Judgment under the Policies;

h.    American Fire had no duty to defend LBI in the Underlying Lawsuit under the Excess Policy;

i.    LBI's conduct excused any obligation of Peerless to defend LBI in the Underlying Lawsuit under the Primary Policy;

j.    Peerless had no obligation to provide LBI independent defense counsel in the Underlying Lawsuit;

k.    To the extent Peerless had a duty to provide LBI independent defense counsel, Peerless had no obligation to pay independent defense counsel more than the rates agreed to by LBI;

l.    To the extent Peerless had a duty to provide independent counsel, and LBI disputes its rate agreement, the parties must

1                    resolve the rate dispute through mandatory arbitration subject to

2                    Section 2860; and

3        m.      To the extent Peerless had a duty to provide LBI independent

4                    counsel, Peerless had, and has, no duty to pay some or all of the

5                    Covington Fees, because they do not reflect fees and costs

6                    reasonable and necessary to the defense of the claims alleged

7                    against LBI in the Underlying Lawsuit.

8      2.      For an order that Plaintiffs are entitled to reimbursement from LBI of

9 any payments made towards the Judgment and/or the Covington Fees, in such

10 amount to be proven by motion or trial;

11      3.      For compensatory damages based on LBI's contractual breaches, in

12 such amount to be proven by motion or trial;

13      4.      For pre-judgment interest;

14      5.      For costs of suit herein; and

15      6.      For such other and further relief as the Court deems just and proper.

16

17 Dated:  April 11, 2017

18                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19

20           By               */s/ Frank Falzetta*

21                      FRANK FALZETTA

22                     Attorneys for Plaintiffs

23             PEERLESS INSURANCE COMPANY and
                  AMERICAN FIRE AND CASUALTY

24                        COMPANY

25

26

27

28

SMRH:482367719.1                                                    COMPLAINT